# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID NEWHOUSE & his wife PATRICIA NEWHOUSE, | : : : | 4:17-CV-00477 |
| Plaintiffs, | : : | (Judge Brann) |
| v. | : : | |
| GEICO CASUALTY COMPANY | : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## September 18, 2017

Before the Court for disposition is Defendant GEICO Casualty Company's Motion to Sever and Stay Plaintiffs' Bad Faith Claim. For the reasons that follow, GEICO's Motion is denied.

## I. BACKGROUND

On March 29, 2017, Plaintiffs David and Patricia Newhouse filed an amended complaint against Defendant GEICO Casualty Company ("GEICO"), alleging breach of contract regarding GEICO's underinsured motorist coverage ("UIM") settlement offer, bad faith in relation to GEICO making such an offer, and

loss of consortium on behalf of Plaintiff Patricia Newhouse.[1] The three counts against GEICO stem from the following facts.[2]

On March 16, 2015, Plaintiff David Newhouse ("Newhouse") was operating a rental vehicle, a 2014 KIA Rio.[3] Newhouse accessed an on-ramp to Interstate 79 in South Strabane Township, Washington County, Pennsylvania.[4] Due to a stop sign located at the end of the on-ramp, Newhouse stopped his vehicle before accessing Interstate 79.[5] Suddenly, Joseph Haywood ("Tortfeasor") struck Newhouse's stationary vehicle from behind.[6] As a result of the accident, Newhouse suffered a variety of injuries, some of which required medical treatment.[7]

On or about March 24, 2016, Tortfeasor's insurance company tendered to Newhouse fifteen thousand dollars ($15,000.00), which was the limit of Tortfeasor's insurance policy.[8] GEICO, Newhouse's insurance provider, consented to the settlement with Tortfeasor's insurance provider, and waived its subrogation rights.[9] Under the terms of the subject insurance policy, GEICO was to provide for

---

[1] Amend. Compl. (ECF No. 6) at 4, 11, 15.
[2] Because this Memorandum concerns only GEICO's Motion to Sever and Stay Newhouse's bad faith claim from the breach of contract claim, Patricia Newhouse's loss of consortium claim need not be addressed at this time.
[3] Amend. Compl. (ECF No. 6) ¶ 9, at 2.
[4] Id.
[5] Id. ¶ 11, at 3.
[6] Id.
[7] Id. ¶ 22, at 8-9.
[8] Id. ¶ 23, at 9.
[9] Def.'s Brief (ECF No. 11) at 1; Pl.'s Brief (ECF No. 13) at 2.

2

all rental vehicles the same coverage to that of Newhouse's personal vehicles.[10] GEICO's policy also provided UIM coverage in the amount of one hundred thousand dollars ($100,000.00) with stacking times two vehicles, permitting possible UIM coverage of two hundred thousand dollars ($200,000.00) per person.[11] GEICO is entitled to a credit of fifteen thousand dollars ($15,000.00) due to Newhouse receiving payment from Tortfeasor's insurance provider, as noted above.[12]

On March 30, 2015, Newhouse's counsel requested from GEICO a complete and certified copy of Patricia Newhouse's insurance policy in effect at the time of the accident.[13] On April 6, 2015, GEICO responded by sending a fax to Newhouse's counsel that only contained a declaration page; GEICO did not fax a complete and certified copy of the insurance policy.[14] On April 30, 2015, Newhouse's counsel again requested that GEICO send a complete and certified copy of Patricia Newhouse's insurance policy.[15] Absent a response from GEICO, Newhouse's counsel yet again requested that GEICO send a complete and certified copy of the insurance policy on June 23, 2015.[16] Finally, on June 26, 2015, GEICO

---

[10] Amend. Compl. (ECF No. 6) ¶¶ 10 & 25, at 3 & 9.
[11] *Id.* ¶ 26, at 9-10.
[12] *Id.* ¶ 27, at 10.
[13] *Id.* ¶ 41(a), at 12. Based on this fact, presumably, Newhouse's insurance policy was under his wife's name.
[14] *Id.* ¶ 41(b), at 12.
[15] *Id.* ¶ 41(c), at 13.
[16] *Id.* ¶ 41(d), at 13.

sent to Newhouse's counsel a complete and certified copy of the insurance policy in effect at the time of the accident.[17]

On May 23, 2016, as a result of his injuries, Newhouse made a demand upon GEICO for the full amount of the UIM coverage permitted under the insurance policy.[18] On June 10, 2016, Newhouse's counsel received a letter from GEICO stating that GEICO would respond to Newhouse after it finished its evaluation of his demand.[19] Before GEICO completed its evaluation, however, Newhouse sent a letter to GEICO, notifying GEICO that Newhouse would require surgery in the future due to his injuries sustained in the accident.[20] GEICO ultimately finished its evaluation of Newhouse's demand, offering Newhouse ten thousand dollars ($10,000.00) for the settlement of his UIM claim.[21]

Believing that their injuries exceeded the settlement amount offered by GEICO, Plaintiffs David and Patricia Newhouse commenced the underlying action against GEICO in the Court of Common Pleas of Clinton County, Pennsylvania.[22] On March 17, 2017, GEICO removed the instant action to this Court based on diversity of citizenship of the parties and an amount in controversy in excess of

---

[17] *Id.* ¶ 41(e), at 13.
[18] *Id.* ¶ 41(f), at 13.
[19] *Id.* ¶ 41(g), at 13.
[20] *Id.* ¶ 41(h), at 13-14.
[21] *Id.* ¶ 41(i), at 14.
[22] *Id.* ¶ 41(l), at 14; *see* ECF No. 1, Exhibit 1.

4

seventy-five thousand dollars ($75,000.00).[23] Three days later, GEICO filed a Motion to Dismiss Plaintiff's Bad Faith Claim for failure to state a claim upon which relief can be granted.[24] This Court denied GEICO's Motion to Dismiss in light of Plaintiffs filing an Amended Complaint on March 29, 2017.[25] GEICO then filed the instant Motion to Sever and Stay Plaintiff's Bad Faith Claim on May 4, 2017.[26] This Motion has been fully briefed by both parties, and is now ripe for disposition.[27]

## II. LAW

Federal Rule of Civil Procedure 42 governs bifurcation. In relevant part, Rule 42(b) provides, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."[28] Evidenced by the word "may," bifurcation is wholly within the court's discretion.[29] "In exercising this discretion, the court is required to weigh the competing interests of the parties and attempt to maintain an even balance."[30] "In maintaining that even balance, the

---

[23] *See* ECF No. 1.
[24] ECF No. 4 ¶¶ 20-21, at 3-4.
[25] ECF No. 7; *see* ECF No. 6.
[26] ECF No. 10.
[27] *See* ECF Nos. 11 & 13.
[28] Fed. R. Civ. P. 42(b).
[29] *See Craker v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 11-0225, 2012 WL 3204214, at *1 (W.D. Pa. Aug. 3, 2012).
[30] *Cooper v. Metlife Auto & Home*, Civ. No. 13-687, 2013 WL 4010998, at *2 (W.D. Pa. Aug. 6, 2013).

5

court must consider whether there is even a fair possibility that the stay would work damage on another party."[31]

In determining whether to sever and stay, a court "must balance considerations including the convenience of the parties, the avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation."[32] Specifically, a court should consider four factors:

> (1) [W]hether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the [moving] party would be prejudiced if bifurcation is not granted.[33]

GEICO, as the moving party, "bears the burden of demonstrating that bifurcation is appropriate."[34]

## III. ANALYSIS

With respect to the first factor, GEICO contends that the breach of contract and the bad faith claim are "wholly distinct" from one another.[35] GEICO argues not only that the evidence underlying each claim is distinct, but also that bifurcation of the two issues promotes judicial economy because "litigation of one issue may obviate the need to try" the other.[36] I disagree.

---

[31] *Id.* at *2 (internal quotation marks omitted).
[32] *Id.* (internal quotation marks omitted).
[33] *Griffith v. Allstate Ins. Co.*, 90 F.Supp.3d 344, 346 (M.D. Pa. 2014) (Mannion, J.).
[34] *Cooper*, 2013 WL 4010998, at *2.
[35] ECF No. 11, at 3.
[36] *Id.*

The instant matter is not the first time breach of contract and bad faith claims have been alleged together in this Court. Indeed, another case, *Griffith v. Allstate Insurance Co.*, contains facts strikingly similar to those here.[37] In *Griffith*, the plaintiff was involved in a car accident.[38] The plaintiff had UIM coverage of $25,000.00 with stacking of two vehicles, permitting coverage up to $50,000.00.[39] The plaintiff settled her claims with the other motorist, and subsequently filed an UIM claim with her insurance company because "her damages exceeded the other driver's policy limits."[40] The defendant insurance company, however, only offered the plaintiff $5,000.00, an amount significantly less than the $50,000.00 demanded.[41] Because of the defendant insurance company's settlement amount, the plaintiff brought suit, alleging breach of contract and bad faith.[42] The defendant insurance company, similar to GEICO here, moved to stay and sever the bad faith claim from the UIM claim.[43]

Balancing the factors above on whether bifurcation was appropriate, the Court in *Griffith* concluded that the defendant insurance company failed to satisfy its burden in proving the two issues distinct.[44] The Court found the two issues to be

---

[37] *See Griffith*, 90 F.Supp.3d at 345.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *See id.* at 346.

7

"significantly intertwined" as to their underlying inquiries.[45] The Court in *Griffith* reasoned:

> In the breach of contract claim, the question for the jury will be whether the plaintiff suffered injuries from the accident that were covered under her UIM policy and she was not otherwise properly compensated. Similarly, the bad faith claim will require the jury to determine whether the defendant's investigation into those same injuries was reasonable and, if so, whether there was a reasonable basis supporting the defendant[ insurance company's] offer of settlement.[46]

Similar to the overlapping nature of the claims in *Griffith*, the Plaintiff's claims here are not so "profoundly different" from one another to warrant bifurcation.[47]

GEICO's contention that litigation concerning the UIM claim might obviate the need to litigate the bad faith claim is also without merit. Newhouse's bad faith claim is based on GEICO offering $10,000.00 as the UIM settlement amount <u>and</u> failing "to act with reasonable promptness in evaluating and responding" to Newhouse's demand.[48] While the two claims are grounded on similar findings of evidence, they are nevertheless separate claims.[49] Thus, litigation on the bad faith claim is not contingent upon success of the breach of contract claim.

---

[45] *Id.*
[46] *Id.* at 346-347.
[47] *Id.* at 346.
[48] Amend. Compl. (ECF No. 6) ¶ 38, at 12.
[49] *See Consugar v. Nationwide Ins. Co. of America*, No. 3:10-CV-2084, 2011 WL 2360208, at *7 (M.D. Pa. June 9, 2011) (Munley, J.).

While each claim would utilize much of the same evidence, Newhouse could "simultaneously prevail on a bad-faith claim and lose on a UIM claim."[50] Indeed, bad faith can extend beyond its underlying breach of contract claim into a limited few areas.[51] One area, for example, "concerns insurers that unreasonably delay the evaluation of their insureds' claims, even if the insurer's ultimate assessment of the claim proves to be correct."[52] Thus, it would be improvident for this Court to sever and stay discovery on bad faith until the conclusion of the breach of contract claim. Accordingly, the first factor opposes bifurcation.

Regarding factor two, while GEICO contends that evidence for Newhouse's UIM claim differs from the evidence for the bad faith claim, this contention is also without merit. In *Griffith*, the Court found that both claims would utilize similar documents, such as the defendant insurance company's claim file, relevant medical evidence of the plaintiff, and the defendant insurance company's settlement attempts.[53]

Newhouse here would use similar evidence and testimony for both his breach of contract and bad faith claims. For example, documents concerning how Newhouse's insurance claim was handled, documents reflecting the claims adjuster's determination, and how GEICO arrived at its settlement value would be

---

[50] *Id.*
[51] *See Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 212 (E.D. Pa. 2017).
[52] *Id.*
[53] *See Griffith*, 90 F.Supp.3d at 347.

relevant for both claims. Contrary to GEICO's contention, bifurcating these claims and consequently requiring two separate discovery processes would be a waste of both judicial resources and time.

GEICO also contends bifurcation would avoid "repeated motions for protective orders" concerning work product.[54] Specifically, GEICO argues that certain documents available to Newhouse for the bad faith claim would be unavailable for the underlying breach of contract claim.

To promote judicial economy, the Court will address the issue of work product now to prevent unnecessary subsequent discussion. Known as the work product privilege or doctrine, Federal Rule of Civil Procedure 26(b)(3)(A) provides:

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).[55]

Rule 26(b)(3)(B) also requires courts to protect against disclosures containing "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[56] That said, while the "work product doctrine may apply to documents prepared by an insurer or agents of an

---

[54] ECF No. 11, at 3.
[55] Fed. R. Civ. P. 26(b)(3)(A).
[56] Fed. R. Civ. P. 26(b)(3)(B).

insurer, it is equally clear that Rule 26(b)(3) **was** not intended to protect all insurance claim files from discovery."[57]

Insurance companies have a duty "to investigate, evaluate and make a decision with respect to claims made on it by its insureds," like Newhouse's demand at issue here.[58] "Mental impressions and opinions" by GEICO's claims adjustor are generally not protected under the work product doctrine unless they were prepared in anticipation of trial.[59] Thus, the threshold question becomes when GEICO anticipated litigation, which is a fact-intensive inquiry.[60]

GEICO, however, has only argued that the information relating to the bad faith claim should be submitted to a jury after the conclusion of the breach of contract litigation.[61] GEICO did not argue that this information was protected by the work-product doctrine. Absent such an objection, GEICO leads the Court to conclude that these documents are discoverable and would have been provided had Newhouse been successful on the underlying breach of contract claim. I find then that GEICO has failed to allege specific documents protected under the work-

---

[57] *Consugar*, 2011 WL 2360208, at *3 (emphasis in original).
[58] *Id.*
[59] *Keefer v. Erie Ins. Exchange*, Civ. No. 1:13-CV-1938, 2014 WL 901123, at *4 (M.D. Pa. Mar. 7, 2014) (Rambo, J.).
[60] *See id.* at *5.
[61] Because the instant Motion is to sever and stay, GEICO has not yet alleged facts to demonstrate when it reasonably anticipated litigation.

11

product doctrine. As such, GEICO must provide the documents that Newhouse requests in discovery.[62]

If, however, GEICO believes certain documents are protected by the work-product doctrine, it may file the appropriate motions requesting this Court conduct an *in camera* review of the particular documents.[63] Contrary to GEICO's assertion that bifurcation would alleviate the need for repeated motions, bifurcation would generate the opposite result because both claims will use similar documents and testimony. The second factor, therefore, weighs against bifurcation.

With respect to factor three, Newhouse again cites *Griffith*, but fails to provide any argument explaining how he might be prejudiced were this Court to grant bifurcation. While the Court will not contrive an argument on Newhouse's behalf, I find *Griffith*'s discussion regarding factor three persuasive. Bifurcation would effectively split this case into two separate trials based on similar evidence and testimony. Bifurcation would require two discovery periods, double the dispositive motions, and double pre-trial motions.[64]

Moreover, Newhouse would prospectively have to pay his attorney for twice the work on the same evidence and testimony. While GEICO previously argued

---

[62] As the Court ordered in *Keefer*, GEICO is put on notice that if Newhouse requests certain documents for discovery that GEICO believes are protected by the work-product doctrine, GEICO has the burden to allege facts demonstrating that the documents are protected. See *Keefer*, 2014 WL 901123, at * 5.
[63] *See Consugar*, 2011 WL 2360208, at *2.
[64] *See Griffith*, 90 F.Supp.3d at 347.

12

that a lack of finding on the breach of contract claim might obviate the need for litigating the bad faith claim, such an argument would carry through were the claims kept together.[65] To bifurcate Newhouse's claims would be an economical injustice not only to Newhouse, but also an unnecessary waste of judicial resources.

Chief Justice John G. Roberts, Jr. wrote in the 2015 Year-End Report from the Federal Judiciary that there exists an "obligation of judges and lawyers to work cooperatively in controlling the expense and time demands of litigation," and lawyers "have an affirmative duty to work together, and with the court, to achieve prompt and efficient resolutions of disputes."[66] Accordingly, the third factor also weighs against bifurcation.

Lastly, GEICO argues that, absent bifurcation of the two claims, it would be prejudiced because it will have to present information on how it values a claim before the jury assesses liability and damages. Furnishing such information before the resolution of the breach of contract claim, GEICO argues, would be "highly prejudicial."[67]

For the breach of contract claim, however, GEICO would have to provide information concerning how it values an insurance claim regardless of whether the

---

[65] *See id.*
[66] JOHN G. ROBERTS, JR., 2015 YEAR-END REPORT ON THE FEDERAL JUDICIARY 6 (2015).
[67] ECF No. 11, at 4.

bad faith claim was severed. Such evidence is relevant for the jury to determine why GEICO offered only $10,000.00 to settle the UIM claim. Moreover, GEICO can defeat a bad faith claim by proving that it had a "reasonable basis" for offering the $10,000.00 settlement amount and expending the length of time it took to evaluate Newhouse's insurance claim.[68] Considering the factors set forth in *Griffith* in conjunction with promoting judicial economy, the Court finds that bifurcation is not warranted.

## IV. CONCLUSION

Based on the above discussion, Defendant GEICO Casualty Company's Motion to Sever and Stay Plaintiff's Bad Faith Claim is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[68] *Walter v. Travelers Personal Ins. Co.*, Civ. No. 4:12-CV-346, slip op. at 5 (M.D. Pa. Nov. 29, 2016) (Carlson, J.).